# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------
SHIVA STEIN,                                    :
                                                :
        Plaintiff,                        :     Civil Action No. _____
                                                :
v.                                              :     **COMPLAINT FOR VIOLATIONS OF**
                                                :     **SECTIONS 14(a) AND 20(a) OF THE**
LOGMEIN, INC., ROBERT M.                        :     **SECURITIES EXCHANGE ACT OF**
CALDERONI, SARA C. ANDREWS,                     :     **1934**
STEVEN J. BENSON, ITA BRENNAN,                  :
MICHAEL J. CHRISTENSON, EDWIN J.                :     **JURY TRIAL DEMANDED**
GILLIS, DAVID J. HENSHALL, PETER J.             :
SACRIPANTI, and WILLIAM R. WAGNER,              :
                                                :
        Defendants.                       :
--------------------------------------------------------  :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against LogMeIn, Inc. ("LogMeIn or the "Company") and the members of the LogMeIn board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of LogMeIn by affiliates of Francisco Partners and Evergreen Coast Capital Corp. (the "Buyout Group").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on January 17, 2020 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Logan Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Logan Parent, LLC (an affiliate of the Buyout Group), will merge with and into LogMeIn, with LogMeIn surviving the merger and becoming a wholly owned subsidiary of Logan Parent, LLC (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each LogMeIn common share issued and outstanding will be converted into the right to receive $86.05 (the "Merger Consideration").

3.      As discussed below, Defendants have asked LogMeIn stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and the financial analyses conducted by the financial advisor of the Company, J.P. Morgan Securities LLC ("J.P. Morgan"), in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to LogMeIn stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because LogMeIn in incorporated in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of LogMeIn common stock and has held such stock since prior to the wrongs complained of herein.

10.     Defendant Robert M. Calderoni has served as a member of the Board since February 2017 and is currently the Chairman of the Board.

11.     Defendant Sara C. Andrews has served as a member of the Board since April 2018.

12.     Defendant Steven J. Benson has served as a member of the Board since October 2004.

13.     Defendant Ita Brennan has served as a member of the Board since November 2018.

14.     Defendant Michael J. Christenson has served as a member of the Board since August 2010.

15.     Defendant Edwin J. Gillis has served as a member of the Board since November 2007.

16.     Defendant David J. Henshall has served as a member of the Board since February 2017.

17.     Defendant Peter J. Sacripanti has served as a member of the Board since February 2017.

18.     Defendant William R. Wagner has served as a member of the Board since 2015 and is currently the President and Chief Executive Officer.

19.     Defendant LogMeIn is incorporated in Delaware and maintains its principal offices at 320 Summer Street, Boston, MA 02210.   The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "LOGM."

20.     The defendants identified in paragraphs 10-18 are collectively referred to herein as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

22.     LogMeIn provides a portfolio of cloud-based communication and collaboration, identity and access, and customer engagement and support solutions. It enables people to connect with each other worldwide to drive meaningful interactions, deepen relationships, and create better outcomes for individuals and businesses. The Company offers GoToConference, a video and audio conferencing solution; GoToMeeting, a product for online meetings, sales demonstrations, and collaborative gatherings; GoToTraining, an online training product for interactive training sessions; GoToWebinar, a do-it-yourself Webinar product for organizations; Grasshopper

telephony solution; Jive, a cloud-based phone service; join.me, join.me pro, and join.me business, which are online meeting and screen sharing services; and OpenVoice, a reservation-less audio conferencing service. It also provides Bold360 and BoldChat, an omni-channel engagement platform and live chat service respectively; Bold360 ai, an automated customer service; RescueAssist, GoToAssist Corporate, and GoToAssist Seeit, which are easy-to-use cloud-based remote support solutions; LogMeIn Rescue, a remote support and customer care service; and LogMeIn Rescue+Mobile and Rescue Lens that are Web-based remote support services. In addition, the company offers LogMeIn Central, a Web-based management console; GoToMyPC that enables mobile workstyles; LogMeIn Pro, a remote access service; and LastPass, a password management and single sign on solution. It serves enterprise customers, small and medium businesses, IT service providers, mobile carriers, customer service centers, OEMs, and consumers. The Company was formerly known as 3am Labs, Inc. and changed its name to LogMeIn, Inc. in March 2006. LogMeIn was founded in 2003 and is headquartered in Boston, Massachusetts with additional locations in North America, South America, Europe, Asia, and Australia.

23.    On December 17, 2019, LogMeIn announced the Proposed Transaction:

> BOSTON, Dec. 17, 2019 (GLOBE NEWSWIRE) -- LogMeIn, Inc. (NASDAQ: LOGM), a leading provider of cloud-based connectivity, today announced that it has entered into a definitive agreement (or the "Agreement") to be acquired in a transaction led by affiliates of Francisco Partners, a leading technology-focused global private equity firm, and including Evergreen Coast Capital Corporation ("Evergreen"), the private equity affiliate of Elliott Management Corporation ("Elliott"), for $86.05 per share in cash. The all-cash transaction values LogMeIn at an aggregate equity valuation of approximately $4.3 billion.

> Under the terms of the Agreement, LogMeIn shareholders will receive $86.05 in cash for each share of LogMeIn's common stock they hold. This consideration represents a premium of approximately 25% to LogMeIn's unaffected closing stock price on September 18, 2019, the last trading day before a media report was

published speculating about a potential sale process. The Board of Directors of LogMeIn approved the Agreement and recommended that shareholders vote in favor of the transaction.

"This transaction acknowledges the significant value of LogMeIn and provides our stockholders with a meaningful and certain cash offer at a compelling premium," said Bill Wagner, President and Chief Executive Officer of LogMeIn. "Together, Francisco Partners and Evergreen are committed to addressing the unique needs of both our core and growth assets. We believe our partnership with Francisco Partners and Evergreen will help put us in a position to deliver the operational benefits needed to achieve sustained growth over the long term."

"LogMeIn has a compelling product portfolio and leadership in the Unified Communications and Collaboration, Identity, and Digital Engagement markets," said Andrew Kowal, Senior Partner at Francisco Partners. "We look forward to working with Bill and the leadership team at LogMeIn to accelerate growth and product investment organically and inorganically."

"This investment builds on the strength of our infrastructure and security software franchise and we are thrilled to partner with the company to achieve its long-term strategic vision," added Dipanjan "DJ" Deb, co-founder and CEO of Francisco Partners.

"We have deep appreciation for the LogMeIn franchise and leadership team from our long-term involvement in the business," said Elliott Partner Jesse Cohn and Portfolio Manager Jason Genrich. "We look forward to partnering with Bill and the entire executive leadership team alongside Francisco Partners on the next phase of growth and value creation for LogMeIn as a private company."

Christine Wang, Principal at Francisco Partners also commented, "We are excited to invest in LogMeIn and support its mission to deliver best-in-class software solutions to the modern workforce."

The transaction is expected to close in mid-2020, subject to customary closing conditions, including the receipt of stockholder and regulatory approvals.

The definitive agreement for the transaction includes a customary 45-day "go-shop" period which permits LogMeIn and its advisors to actively solicit alternative acquisition proposals, and potentially enter negotiations with other parties that make alternative

acquisition proposals. LogMeIn will have the right to terminate the definitive agreement to accept a superior proposal subject to the terms and conditions of the definitive agreement. There can be no assurance that this process will result in a superior proposal, and LogMeIn does not intend to disclose developments with respect to the solicitation process unless and until its Board of Directors makes a determination requiring further disclosure.

Qatalyst Partners and J.P. Morgan Securities LLC are acting as financial advisors to LogMeIn, and Latham & Watkins LLP is serving as the company's legal advisor.

Mizuho Bank, Ltd. is acting as lead financial advisor and Barclays, Deutsche Bank Securities, Jefferies LLC, and RBC Capital Markets are acting as co-financial advisors to Francisco Partners and Evergreen with Paul Hastings LLP, Kirkland & Ellis LLP, and Gibson, Dunn & Crutcher LLP serving as legal advisors. Barclays, RBC Capital Markets, Deutsche Bank Securities, Jefferies Finance LLC, and Mizuho Bank, Ltd. have provided committed debt financing for the transaction.

* * *

24.     The Board is recommending to the Company's shareholders to vote in favor of the Proposed Transaction. It is therefore imperative that LogMeIn's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

25.     On January 17, 2020, LogMeIn filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or

omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning LogMeIn Financial Projections*

26.     The Proxy Statement fails to provide material information concerning financial projections prepared by LogMeIn management and relied upon by J.P. Morgan in its analyses. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisor with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that LogMeIn management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     For the Company Projections provided to the Buyout Group, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2019 through 2025: Non-GAAP Revenue, Non-GAAP Operating Income, Adjusted EBITDA, Adjusted Free Cash Flow, Unlevered Free Cash Flow Pre SBC Excluding One-Time Cash Charges, Unlevered Free Cash Flow Pre SBC, and Unlevered Free Cash Flow Post SBC, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP

metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Proxy Statement at 69.

28.     When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

31.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the line items used to calculate Unlevered Free Cash Flow Post SBC for fiscal years 2020 to 2025; (ii) the inputs and assumptions underlying the range of discount rates ranging from 7.75% to 8.75%, (iii) range of terminal asset values for the Company and the basis for applying a perpetual growth rate range between 2.0% and 3.0%; and (iv) the Company's estimated 2019 fiscal year-end total net debt. Proxy Statement at 67.

32.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100

33.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

35.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analyses that were prepared by J.P. Morgan and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

36.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

37.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

38.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and

omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate

remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully

protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

40.     The Individual Defendants acted as controlling persons of LogMeIn within the

meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

directors of LogMeIn, and participation in and/or awareness of the Company's operations and/or

intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement

filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision making of LogMeIn, including the content and dissemination

of the various statements that Plaintiff contends are materially incomplete and misleading.

41.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected.

42.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of LogMeIn, and, therefore, is presumed to have had the

power to control or influence the particular transactions giving rise to the Exchange Act violations

alleged herein, and exercised the same.  The omitted information identified above was reviewed

by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains

the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

43.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

46.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 22, 2020

**RIGRODSKY & LONG, P.A.**

By:   */s/ Gina M. Serra*

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*